No. 92-270

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STEVEN J. HARMAN,

      Plaintiff and Appellant,

  v.

MIA SERVICE CONTRACTS and
AMERICAN ADJUSTMENT COMPANY, INC.,

      Defendants and Respondents.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Paul M. Warren, Attorney at Law, Billings,
Montana; A. Clifford Edwards, Edwards Law
Firm, Billings, Montana

      For Respondents:

            William R. McNamer, McNamer, Thompson,
Werner & Stanley, Billings, Montana

**FILED**

AUG 1 9 1993

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  September 10, 1992

Decided:  August 19, 1993

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff Steven J. Harman filed his complaint in the District Court for the Thirteenth Judicial District in Yellowstone County to recover damages pursuant to a vehicle service contract entered into with a Billings auto dealer. Defendant MIA Service Contracts (MIA) was the original administrator of the contract and adjusted claims made pursuant to the contract. Defendant American Adjustment Company, Inc. (AAC), later assumed responsibility for adjusting plaintiff's claim. The District Court concluded that plaintiff was not entitled to recover against defendant AAC under any theory alleged in plaintiff's complaint and granted AAC's motion dismissing plaintiff's claim against it by summary judgment. From that judgment, plaintiff appeals. We affirm in part and reverse in part.

The issues on appeal are:

1. Was plaintiff a third-party beneficiary of a contract entered into by defendant American Adjustment Company, Inc., and therefore, entitled to enforce that contract?

2. Can plaintiff sue American Adjustment Company, Inc., or Century Indemnity Company, for violations of the Unfair Trade Practices Act found at § 33-18-201, MCA, or is such a suit barred by plaintiff's failure to first comply with § 33-18-242(6)(b), MCA?

FACTUAL BACKGROUND

On November 23, 1985, plaintiff purchased a Jeep Cherokee from Bert Arnlund Chrysler in Billings. On August 29, 1986, he paid Arnlund $655 for a vehicle service contract in which Arnlund agreed

2

to make certain repairs to plaintiff's vehicle beyond the period of time covered in the manufacturer's warranty agreement.

The contract provided that it would be administered by MIA Service Contracts and that the administrator must be contacted for authorization of repairs. The contract also provided that the administrator did not assume any liability to the contract holder, but that the administrator's liability was to the dealer in accordance with their separate agreement.

From what can be determined from the record, it appears that MIA helped dealers throughout the country market vehicle service contracts, and then had a separate agreement with each dealer to administer the contracts by adjusting claims made pursuant to the contracts after they were sold. Pursuant to a separate agreement between MIA and the dealer, repairs could not be made without MIA's prior approval. A portion of the premium would be retained by the dealer and put into a reserve fund to pay some claims made pursuant to the contracts. A portion of the premium was retained by the dealer as his fee for selling the contract; a portion was paid to MIA to administer the contract; and a portion was paid by MIA to Century Indemnity Company (Century) to insure against those claims which exceeded the dealer's responsibility under its agreement with MIA and Century. Century is a wholly owned subsidiary of CIGNA.

In 1987, MIA declared itself bankrupt and stopped doing business as administrator of the contracts.

As mentioned above, Century had sold an insurance policy to Arnlund covering him against vehicle service contract claims above

3

those amounts which were covered by the reserve fund maintained by Arnlund.

Another wholly owned subsidiary of CIGNA, AAC, had been basically dormant until 1988 when it was resurrected by Century for the sole purpose of adjusting any claims made pursuant to contracts marketed by MIA prior to its bankruptcy. According to AAC's general manager, Robert McAllister, the agreement to handle these claims would have been entered into between AAC and Century. However, it is clear from his testimony that AAC assumed those responsibilities for adjusting claims that had previously been assigned to MIA pursuant to its separate contract with Arnlund.

On April 12, 1990, the fuel pump in plaintiff's Jeep Cherokee malfunctioned and he replaced it while in Bozeman at a cost of $144. He submitted a claim to AAC for the amount of that repair. However, defendant refused to authorize payment for the repair based upon the fact that defendant had not given prior approval for the expenditure.

On October 17, 1990, plaintiff discovered damage to his front drive line axle and requested coverage from AAC for the cost of that repair. However, AAC denied that the drive line axle was a covered part under the vehicle service contract. Prior to plaintiff's purchase of the vehicle service contract, Arnlund and MIA provided plaintiff with a brochure which indicated that the drive line would be covered.

On November 13, 1990, plaintiff filed a complaint against AAC and MIA in which he described the vehicle service contract and

4

alleged that it had been breached by defendants. In addition to his claim for breach of contract, plaintiff alleged that defendants' denial of his claims was a violation of the covenant of good faith and fair dealing, that defendants were negligent, that defendants violated § 33-18-201(5), MCA, of the Unfair Trade Practices Act, and that defendants were guilty of constructive fraud, gross negligence, and oppression which entitled plaintiff to punitive damages pursuant to § 27-1-221, MCA.

Defendant MIA did not appear and did not respond to plaintiff's allegations.

On April 11, 1991, defendant AAC moved for summary judgment for the reason that it had no direct contractual relationship with plaintiff and that the third-party claim filed by plaintiff pursuant to § 33-18-242, MCA, must await resolution of any underlying claim that plaintiff had against the auto dealer, Arnlund.

On April 1, 1992, the District Court entered its memorandum and order granting AAC's motion for summary judgment, and on April 21, 1992, final judgment was entered by the District Court in favor of AAC and certified as final pursuant to Rule 54(b), M.R.Civ.P.

On appeal from the judgment of the District Court, plaintiff's arguments focus on two principal issues. The first is whether plaintiff had enforceable rights as a third-party beneficiary of contracts in which AAC promised to perform services for plaintiff's benefit. The second issue is whether AAC can be sued as an insurer

5

for violation of the Unfair Trade Practices Act without any prior resolution of plaintiff's right under its contract with the auto dealer, Arnlund.

## CONTRACT ISSUE

The District Court found that the vehicle service contract was entered into between plaintiff and his auto dealer. It also determined that any repair work done under the contract must be approved by the administrator (MIA), but that the administrator assumed no personal liability to plaintiff.

The District Court also found that Century insured Arnlund against claims under extended service contracts, and that when MIA folded, Century resurrected AAC to adjust claims under the service contracts. However, the court concluded that neither Century nor AAC were involved in marketing the vehicle service contracts.

Based upon the discrepancy between the brochure used in marketing the contract and the terms of the written agreement itself, the District Court concluded that there was at least a genuine issue of fact as to whether there was coverage under the contract for the claims made by plaintiff. The District Court also concluded that there was a genuine issue of fact regarding whether Arnlund was acting as an agent for MIA, which would make MIA liable for performance under the contract. Therefore, the District Court concluded that plaintiff could sue both the dealer and MIA. However, Arnlund was not a party to the suit and MIA was involved in bankruptcy proceedings and had not appeared.

6

The District Court concluded that since neither Century (whom plaintiff sought to join as a defendant by amendment) nor AAC were parties to the contract, they could not be sued for breach of the contract nor its related theories. Furthermore, the District Court concluded that even though Century did insure Arnlund, and AAC acted on Century's behalf in adjusting claims pursuant to that policy of insurance, there was no direct policy of insurance issued from either Century or AAC to plaintiff. Therefore, any claim that plaintiff may have pursuant to the Unfair Trade Practices Act is a third-party claim; and before it can be pursued, plaintiff would first have to resolve his underlying claim against the dealer pursuant to § 33-18-242(6)(b), MCA.

While it is true that plaintiff had no direct contractual arrangement with AAC, AAC did, by necessary inference, enter into some agreement with Century to adjust claims made pursuant to plaintiff's vehicle service contract with Arnlund. When it did so, it assumed the administrative responsibility formerly promised by MIA. It also impliedly agreed to handle those responsibilities in a manner consistent with Arnlund's obligations under the contract.

It is plaintiff's position that he was the intended beneficiary of AAC's agreement to adjust claims consistent with Arnlund's contractual obligations, and that as an intended beneficiary, he has the right to enforce those obligations against the promisor, AAC. We agree.

The rule regarding the rights of third-party beneficiaries to enforce contracts is accurately summarized at Restatement (Second)

7

of Contracts § 304 (1981), where it provides that "[a] promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty."

The issue then is whether plaintiff was an intended beneficiary of AAC's agreement to administer claims under the contract. The answer is found in Restatement (Second) of Contracts § 302 (1981), where intended beneficiaries are described as follows:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

In this case, Century enlisted the services of AAC to adjust claims under Arnlund's extended service agreement because of Century's obligation to insure against those claims and possibly pay money to claimants like plaintiff. Therefore, we conclude that when AAC agreed to administer the plaintiff's rights under the contract, the performance of its promise to do so satisfied an obligation of Century and Arnlund to plaintiff. And since AAC has exclusive authority to approve or disapprove claims under the contract, we also conclude that it is appropriate to recognize plaintiff's right to performance in order to effectuate the

8

intentions of the parties that plaintiff receive all benefits provided for under his contract with Arnlund.

For these reasons, we conclude that plaintiff was an intended third-party beneficiary of AAC's agreement with Century, and he had a right to seek contract damages from AAC for its failure to perform its administrative responsibilities in accordance with his rights under the vehicle service contract. The District Court's summary judgment is reversed and this case is remanded to the District Court for a factual determination of plaintiff's rights under that contract.

## UNFAIR TRADE PRACTICES ACT

The District Court found that there was no insurance contract entered into between plaintiff and either AAC or Century. Plaintiff does not disagree.

Century insured Arnlund, and AAC agreed with Century to administer and adjust claims made against Arnlund. Therefore, any claim by plaintiff against Century or AAC for their failure to handle his claim in accordance with the provisions of the Unfair Trade Practices Act found at § 33-18-201, MCA, is a third-party claim. Pursuant to § 33-18-242(6)(b), MCA:

> A third-party claimant may not file an action under this section until after the underlying claim has been settled or a judgment entered in favor of the claimant on the underlying claim.

We agree with the District Court's holding that pursuant to § 33-18-242, MCA, no claim under the Unfair Trade Practices Act can be brought against AAC or Century until plaintiff first asserts and

9

resolves his claim on the underlying contract against AAC or Arnlund. That part of the District Court's summary judgment dismissing plaintiff's claim pursuant to § 33-18-201, MCA, is affirmed.

For the foregoing reasons, the judgment of the District Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____
                                Justice

We concur:

_____
Chief Justice

_____

_____
Justices

_____
District Court Judge Dorothy
McCarter sitting in place of
Justice Karla M. Gray

Justice Fred J. Weber dissents as follows:

I dissent from the conclusion of the majority opinion that plaintiff was an intended third-party beneficiary of AAC's (American Adjustment Company) agreement with Century (Century Indemnity Company) and had a right to seek contract damages from AAC for its failure to perform its administrative responsibilities in accordance with plaintiff's rights under the Vehicle Service Contract (VSC).

Plaintiff purchased a 1986 Jeep Cherokee from Arnlund Automotive, Inc. d/b/a Arnlund Chrysler Plymouth Jeep (Arnlund). On August 29, 1986, plaintiff purchased a Vehicle Service Contract from Arnlund. The key part of the VSC is the following promise by Arnlund as dealer:

> The Dealer [Arnlund] agrees that subject to all terms and conditions on the front of this Service Contract for the period indicated to make such repairs to the described vehicle as shall become necessary because of mechanical failure as defined herein.

The record does not demonstrate why Arnlund was not named as a party defendant. Plaintiff's briefs suggest that the reason was because Arnlund was not the party making the decisions regarding the repair of plaintiff's vehicle under the VSC.

The VSC showed it was administered by defendant MIA Services Contracts (MIA). In case of loss the pertinent provisions of the VSC are:

IN CASE OF LOSS

> In the event of mechanical failure you may take your vehicle to any licensed repair facility. However, it is

11

suggested that you take your vehicle back to the dealer from whom you purchased it. In your presence have the service manager contact the office of the administrator [MIA]. . . . You must contact the administrator before authorizing repairs . . . No indemnity shall be payable under the service contract without authorization issued by the dealer [Arnlund] or administrator [MIA] prior to the repair or replacement of vehicle parts covered by this service contract. . . . The administrator [MIA]does not assume, and specifically disclaims any liability to you [plaintiff] for any benefits provided herein. The liability of the Administrator [MIA] is only to the Dealer [Arnlund] in accordance with their separate agreement.

Note that MIA as administrator was liable only to Arnlund as dealer and not to plaintiff. Plaintiff has named MIA as a party-defendant but because of the bankruptcy of MIA, it is not an active party.

The District Court in its Memorandum and Order made specific reference to the foregoing contractual provisions. The District Court made further reference to the contractual relationship between Arnlund and Century, stating:

In connection with the VSC Arnlund also had an "Automobile Extended Service Contract Policy" with Century. Arnlund was the insured and Century the insurer. . . . Century agreed to insure Arnlund to pay under certain conditions and subject to some self insurance provisions "losses arising out of the reasonable and customary cost of repair or replacement under and in accord with the all of the terms of the extended service contracts issued by the insured [Arnlund] on or after the inception date of this policy".
. . .

The District Court further established the relationship between various parties stating:

The deposition of Robert McCallister, the general manager of American [AAC] establishes the relationships between American [AAC], Century and related companies. When MIA filed bankruptcy Century took steps to protect consumers and itself concerning contracts it had insured such as

12

the contract with plaintiff. . . . Century is a wholly owned subsidiary of CIGNA. . . . Century did not have an adjusting department and American [AAC] was used for that purpose. American was a previously dormant company revived for the purpose of adjusting the claims of dealers for which MIA had acted as administrator under VSC contracts. American is also a wholly owned subsidiary of CIGNA. <u>Neither Century nor American were involved in any way in marketing any VSC contracts or the particular contract issued to plaintiff in 1986.</u> . . . (Emphasis supplied.)

The uncontradicted facts in the record establish that the District Court was correct in its above stated conclusions.

With further regard to AAC the District Court stated:

The only defendant who has appeared is American [AAC] which is the wholly owned subsidiary of CIGNA given the job of adjusting the VSC contracts administered by MIA after its business failure. The reason American is adjusting the contracts is because of the automobile extended service contract policy written by Century, another wholly owned subsidiary of CIGNA. That policy names Arnlund as the insured and Century as the insurer. . . .

It is important to emphasize the District Court's further analysis and conclusions as follows:

Century's sole involvement in this case is because of its automobile extended service contract policy written in favor of Arnlund where it has agreed to insure Arnlund for "losses arising out of the reasonable and customary costs of repair or replacement" under the VSC (McCallister Depo. Ex. 12). American's sole involvement is its charge to adjust the claims for Century under previously issued VSC's naming MIA as administrator after the business failure of MIA.
<u>Under no theory are Century and American parties to the VSC who could be sued directly by plaintiff for breach of contract or breach of covenants running with the contract.</u> The VSC is between plaintiff and Arnlund. Perhaps MIA could be held liable under the contract as the principal represented by its agent Arnlund but <u>there is no theory whereby Century and American are themselves parties to the contract with plaintiff.</u> (Emphasis added.)

13

The District Court emphasized that Century was involved only because of its policy written in favor of Arnlund. The uncontradicted record supports that conclusion. At this point I emphasize that AAC's sole involvement was to adjust the claims for Century and Arnlund. As previously mentioned, AAC was not in any way administering the VSC in the manner in which MIA was required to do under the terms of the plaintiff-Arnlund VSC.

The deposition of Robert McCallister relied upon by the District Court establishes that CIGNA came to the realization that it was going to have to take over the obligation of adjusting the losses on contracts which were in existence with the public. Century and AAC both are wholly owned subsidiaries of CIGNA. The deposition established that Century arranged for the adjustment of its claims with Arnlund through AAC. The specific terms of that arrangement, whether oral or in writing, are not established in the record. The deposition further established that AAC had done nothing with regard to marketing, and was not in any way involved with VSC contracts such as that between plaintiff and Arnlund, with the exception only of the adjustment of claimed losses.

The majority opinion states as follows:

> While it is true that plaintiff had no direct contractual arrangement with AAC, AAC did, by necessary inference, enter into some agreement with Century to adjust claims made pursuant to plaintiff's vehicle service contract with Arnlund. When it did so, it assumed the administrative responsibility formerly promised by MIA. It also impliedly agreed to handle those responsibilities in a manner consistent with Arnlund's obligations under the contract.

**14**

I find nothing in the record which establishes an assumption by AAC of any administrative responsibilities formerly promised by MIA. Clearly that is a reference to the VSC between plaintiff and Arnlund. There is nothing in the record to demonstrate that AAC assumed any administrative responsibilities under that VSC, and in particular nothing which demonstrates it was obligated to take the place of MIA. I find nothing in the record from which the opinion may conclude that AAC impliedly agreed to handle the responsibilities in a manner consistent with Arnlund's obligation under the contract--again an apparent reference to Arnlund's obligation to the plaintiff under his VSC.

After referring to the Restatement provisions, the majority opinion states as follows:

> In this case, Century enlisted the services of AAC to adjust claims under Arnlund's extended service agreement because of Century's obligation to insure against those claims and possibly pay money to claimants like plaintiff. Therefore, we conclude that when AAC agreed to administer the plaintiff's rights under the contract, the performance of its promise to do so satisfied an obligation of Century and Arnlund to plaintiff. And since AAC has exclusive authority to approve or disapprove claims under the contract, we also conclude that it is appropriate to recognize plaintiff's right to performance in order to effectuate the intentions of the parties that plaintiff receive all benefits provided for under his contract with Arnlund.

The record does not support the conclusion that AAC agreed to "administer the plaintiff's rights under the contract." At most AAC agreed to adjust the claims made against Arnlund under the provisions of the contract between Arnlund and Century. That contract of course is not directly connected to the VSC contract

15

between plaintiff and Arnlund. We find no record basis to conclude that AAC agreed to administer the plaintiff's rights under the contract, by which I assume reference is made to the VSC between plaintiff and Arnlund.

Next the majority states that AAC has "exclusive authority" to approve or disapprove claims under the contract from which it concludes that it is appropriate to recognize plaintiff's right of performance. The record does not support the conclusions that AAC had exclusive authority to approve or disapprove claims. Apparently the majority is referring to the provisions of the VSC between plaintiff and Arnlund which does provide that MIA must be contacted. There is nothing in the record to establish that AAC in any way assumed the responsibilities of MIA. As a result I disagree emphatically with the conclusion that it is appropriate to recognize plaintiff's right to performance to effectuate the intentions of the parties. The record does not substantiate any intention that AAC should succeed to any of the obligations of MIA under the plaintiff-Arnlund VSC.

Next the majority opinion states:

> For these reasons, we conclude that plaintiff was an intended third-party beneficiary of AAC's agreement with Century, and he had a right to seek contract damages from AAC for its failure to perform its administrative responsibilities in accordance with his rights under the vehicle service contract.

I find no record basis for the foregoing conclusion. The record demonstrates that AAC did not have any obligation to perform

administrative responsibilities of any type and in particular not under the VSC between plaintiff and Arnlund.

I conclude the record supports all of the findings and conclusions on the part of the District Court. I dissent from the opinion's reversal of the summary judgment by the District Court. I would affirm the District Court.

_____
Justice

Chief Justice J. A. Turnage and Justice R. C. McDonough concur in the foregoing dissent.

_____
Chief Justice

_____
Justice

August 19, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Paul M. Warren
Attorney at Law
P.O. Box 21282
Billings, MT  59104

A. Clifford Edwards
Edwards & Paoli
P.O. Box 20039
Billings, MT  59104

William R. McNamer
McNamer, Thompson, Werner, & Stanley
P.O. Box 1980
Billings, MT  59103-1980


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy